# In the United States District Court for the Southern District of Georgia Waycross Division

FILED
Scott L. Poff, Clerk
United States District Court

By CAsbell at 12:46 pm, Apr 09, 2020

DONALD IVEY STALVEY, JR.

    Plaintiff,

    v.

UNITED STATES OF AMERICA,

    Defendant.

No. 5:18-cv-019

## ORDER

On October 15, 2019, the Court conducted a bench trial in the above-captioned case. After hearing testimony from Mr. Stalvey and his wife, viewing the videotaped trial deposition of Mr. Stalvey's treating physician, Dr. Hellman, hearing the cross-examination of Defendant's expert witness, Dr. Sofianos, and considering all the evidence tendered at the trial, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

Firstly, however, Plaintiff objected to the Magistrate Judge's Order excluding his treating physician, Dr. Hellman, from testifying on causation. Dkt. No. 70; see Dkt. No. 66. His objection is fully briefed by the parties, dkt. nos. 70, 71, 75, and ripe for review. For the reasons below, Plaintiff's objection,

dkt. no. 70, is **OVERRULED** and the Magistrate Judge's Order is
**AFFIRMED.**

## I.   **PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S ORDER**

On October 8, 2019, the Magistrate Judge issued an Order,
dkt. no. 66, granting Defendant's motion to exclude Dr. Hellman's
testimony on causation, dkt. no. 57, and denying as moot
Defendant's motion in limine regarding the same, dkt. no. 65. In
his Order, the Magistrate Judge reasoned that since there was
"nothing in Dr. Hellman's testimony or in the medical records
demonstrating that Dr. Hellman considered, evaluated, or
determined the cause of Plaintiff's injuries during the course of
treatment or that such a determination was material in any way to
Plaintiff's treatment," Dr. Hellman could not testify about the
cause of Mr. Stalvey's injuries without first providing an expert
witness report pursuant to Federal Rule of Civil Procedure
26(a)(2)(B). See Dkt. No. 66.

On October 12, 2019, Plaintiff filed his objection to the
Magistrate Judge's Order. Dkt. No. 70. There, Plaintiff argued
that the Order "established a rule that is impossible for any
treating physician to meet," and, moreover, one which is contrary
to case law, Federal Rule of Civil Procedure 26(a)(2)(C), and
Federal Rule of Evidence 702. Id. at 6. Defendant responded by
arguing that the Order did not establish new law but instead

"correctly applied governing law" to the facts of this case. Dkt. No. 71 at 1, 2. Defendant has the better argument.

## A.    Standard of Review

When considering a party's objections to a magistrate judge's ruling on a non-dispositive matter, the district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Otherwise, the magistrate judge's ruling stands. "A ruling is clearly erroneous where either the magistrate judge abused his discretion or the district court, after reviewing the entirety of the record, is left with a definite and firm conviction that a mistake has been made." Jackson v. Deen, No. 4:12-CV-139, 2013 WL 3991793, at *2 (S.D. Ga. Aug. 2, 2013) (citing Pigott v. Sanibel Dev., LLC, No. CIVA 07-0083, 2008 WL 2937804, at *5 (S.D. Ala. July 23, 2008)). A decision by the magistrate judge is contrary to law when it "fails to follow or misapplies the applicable law." Id. (citations omitted).

## B.    Discussion

In his Order granting Defendant's motion to exclude the testimony of Dr. Hellman, dkt. no. 66, the Magistrate Judge held that Dr. Hellman——although disclosed as a Rule 26(a)(2)(C) witness——was still required to provide a Rule 26(a)(2)(B) report because he intended to offer opinion testimony on causation that he formed beyond his course of treatment for Mr. Stalvey. Indeed, Dr. Hellman's opinion regarding the cause of Mr. Stalvey's injuries

was developed beyond his course of treatment. As the Magistrate Judge noted, there is nothing in Dr. Hellman's deposition testimony or medical records that shows he considered, evaluated, or determined the cause of Mr. Stalvey's injuries. Similarly, Dr. Hellman makes no mention in his deposition or medical records as to how his perceived cause of Mr. Stalvey's injuries was material to his diagnosis or treatment of Mr. Stalvey.

Based on these facts, the Magistrate Judge's holding is squarely in line with current caselaw on this issue. See Kondragunta v. Ace Doran Hauling & Rigging Co., No. 1:11-cv-01094, 2013 WL 1189493, at *3 (N.D. Ga. Mar. 21, 2013) (a properly disclosed treating physician expert can testify on causation, so long as they formed that opinion during their course of treatment); In re Denture Cream Prods. Liab. Litig., No. 09-2051, 2012 WL 5199597, at *4 (S.D. Fla. Oct. 22, 2014) (holding that when a proponent of the treating physician's testimony fails to show that his or her opinions are based on observations made during the course of treatment, Rule 26(a)(2)(B) reports are required); Goodman v. Staples the Office Superstore, LLC, 644 F.3d 817, 826 (9th Cir. 2011) (same); Advendt v. Covidien, Inc., 314 F.R.D. 547, 555 (E.D. Mich. 2016) (same).

Despite Plaintiff's failure to provide Defendant with a Rule 26(a)(2)(B) report, the Magistrate Judge was still willing to permit Dr. Hellman's causation testimony to be heard at trial

because Defendant did not argue that the lack of Dr. Hellman's report was unjustified, prejudicial, or surprising. See Fed. R. Civ. P. 37(c)(1) (the Court may admit a Rule 26(a)(2)(B) expert's testimony without a report if failure to provide the report is "substantially justified or is harmless"). However, the Magistrate Judge ruled that Mr. Stalvey could present such testimony only if Dr. Hellman's testimony survived the scrutiny of Federal Rule of Evidence 702. See United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005). It did not, and the Magistrate Judge properly excluded the testimony.

Here, the Magistrate Judge held that Dr. Hellman's methodology was unreliable and that his testimony would ultimately be unhelpful to the jury. This conclusion was not erroneous, nor was it contrary to law. First, Dr. Hellman's testimony and writings show how he identified Plaintiff's injuries (MRI scans, x-rays, and physical exams) and how he determined which injuries caused Plaintiff to experience pain (history), but—as the Magistrate Judge points out—"nothing in the record shows how Dr. Hellman determined that the October 26, 2015 accident caused Plaintiff's injuries." Dkt. No. 66 at 14. At best, Dr. Hellman notes the temporal relationship between the accident and the onset of Mr. Stalvey's pain; however, that is not enough to carry the day under a Daubert analysis. McClain v. Metabolife, Int'l, Inc., 401 F.3d 1233, 1243 (11th Cir. 2005) (assuming causation from a temporal

relationship is a *post hoc ergo propter hoc* logical fallacy). Since Dr. Hellman's testimony is based on an unreliable methodology, it is unhelpful to the factfinder. <u>Daubert</u>, 509 U.S. at 591. Under these facts, the Magistrate Judge's conclusion that Dr. Hellman's causation testimony should be excluded for failing to meet the requirements of Rule 702, <u>Daubert</u>, and its progeny was not clearly erroneous nor was it contrary to law. Accordingly, Plaintiff's objection, dkt. no. 70, is **OVERRULED** and the Magistrate Judge's Order, dkt. no. 66, is **AFFIRMED.** Dr. Hellman's causation testimony was properly excluded.

## II. FINDINGS OF FACT

The Court makes the following findings of fact:

1.

At the time of trial, Donald Stalvey was 44 years old. He is married to Candace Stalvey. Together they have two minor children: an eleven-year-old girl and a seven-year-old boy. Mr. Stalvey has an adult child from a previous marriage.

2.

Prior to the accident, Mr. Stalvey had no back or neck pain. Although Mr. Stalvey had degenerative disc disease and arthritis prior to the accident, the conditions were not clinically significant. Mr. Stalvey was asymptomatic and never received treatment for those underlying conditions.

3.

There is no medical evidence or testimony that Mr. Stalvey suffered from herniated discs or bulging discs prior to the accident.

4.

Prior to the accident, Mr. Stalvey enjoyed watching his children participate in sporting events and roughhousing with his young son.

5.

Prior to the accident, Mr. Stalvey played bass in his church's praise band and helped other men at the church set up chairs and tables for social gatherings.

6.

Mr. Stalvey owns and operates Stalvey Heating and Cooling. His work history prior to the accident primarily consisted of manual labor. At Stalvey Heating and Cooling, Mr. Stalvey ran the office and installed products for customers. This occasionally involved crawling under houses, stooping in attics, and lifting HVAC units.

7.

Mr. Stalvey owns a blueberry farm and tends honeybees. Prior to the accident, Mr. Stalvey tended to his blueberry farm and beehives without incident and could maintain the family home without assistance.

8.

Prior to the accident, Mr. Stalvey played a larger role in planning, traveling to, and participating in family vacations.

9.

On October 26, 2015, at approximately 2:54 p.m., Mr. Stalvey was the front passenger in a 2014 Chevrolet Silverado traveling northbound on Georgia Highway 11 at approximately 55 miles per hour. Mr. Stalvey's adult daughter was driving the Silverado, which was owned by Stalvey Heating and Cooling.

10.

At the same time, D'Arcy Nicole Jackson was operating her personal vehicle, a 2000 Jeep Cherokee, traveling west on Norman Eva Road.

11.

Norman Eva Road and Georgia Highway 11 intersect in Echols County, Georgia, with vehicles on Georgia Highway 11 having the right-of-way.

12.

Although the Silverado occupied by Mr. Stalvey had the right-of-way, Ms. Jackson failed to yield at a stop sign and struck the Silverado in the intersection of Norman Eva Road and Highway 11.

13.

At the time of the collision, Ms. Jackson was a rural letter carrier employed by the United States Postal Service and she was acting within the scope of her employment with the United States.

14.

Following the accident, Plaintiff amassed the following medical bills:

| | | |
|---|---|---|
| A. | CRH Physician Practices | $150.00 |
| B. | Schumachergroup (Emergency Treatment) | $1,213.00 |
| C. | Radiology Associates of South Georgia | $98.00 |
| D. | Douglas Spine Center | $1,803.00 |
| E. | Georgia Sports Medicine | $1,099.00 |
| F. | Open MRI of Douglas | $4,200.00 |
| G. | Rehab Services of Coffee County | $1,389.00 |
| H. | The Medicine Cabinet | $164.33 |
| | Total: | $10,116.33 |

15.

Mr. Stalvey experienced pain following the accident but did not seek medical treatment until the following day, October 27, 2015. On that date, he presented to the Coffee County Regional Hospital's emergency room in Douglas, Georgia complaining of neck and back pain. He was charged $1,213 for this hospital visit. X-rays were taken during this visit, for which Mr. Stalvey was charged $98.00.

16.

On October 29, 2015, Mr. Stalvey sought treatment at CRH Physician Practices. Mr. Stalvey was charged $150.00 for the visit.

17.

From November 9, 2015 to January 6, 2016, Mr. Stalvey received chiropractic treatment from Dr. Luis D. Rojas, D.O. of the Douglas Spine Center. Mr. Stalvey was treated by Dr. Rojas seventeen times. Mr. Stalvey has submitted medical bills for eight of those seventeen visits (November 9, 2015 through December 4, 2015) for a total of $1,048.00; however, the account balance reflected on the account statement is $1,803.00.

18.

At the end of his last visit on January 6, 2016, Dr. Rojas recommended Mr. Stalvey consult an orthopedist to further evaluate his neck.

19.

On January 27, 2016, Mr. Stalvey began treatment with Dr. Hellman, an orthopedist at Georgia Sports Medicine. Mr. Stalvey saw Dr. Hellman, or one of his physician's assistants, at Georgia Sports Medicine, nine times from January 27, 2016 through the date of the trial. The last time Mr. Stalvey received treatment at Georgia Sports Medicine prior to the trial was July 12, 2019.

20.

On January 27, 2016, Dr. Hellman noted that Mr. Stalvey's back pain was quite a bit better and was almost completely resolved; however, Mr. Stalvey continued to complain of neck pain as a result of the motor vehicle accident. This neck pain prompted him to visit Dr. Hellman.

21.

On February 10, 2016, Mr. Stalvey presented to Dr. Hellman's office as a follow-up to his previous appointment and to review an MRI of his neck. The MRI of his neck revealed a disc herniation at the C5-6 level. Mr. Stalvey presented with no complaints of back pain.

22.

On May 24, 2016, Mr. Stalvey presented to Dr. Hellman's office as a follow-up to his previous appointment regarding neck pain following a motor vehicle accident. Mr. Stalvey presented with no complaints of back pain.

23.

On October 19, 2016, Mr. Stalvey presented to Dr. Hellman's office as a follow-up to his previous appointment regarding neck pain following a motor vehicle accident. Mr. Stalvey presented with no complaints of back pain.

24.

On May 5, 2017, Mr. Stalvey presented to Dr. Hellman's office as a follow-up to his previous appointment regarding neck pain following a motor vehicle accident. Mr. Stalvey presented with no complaints of back pain. Dr. Hellman noted that Mr. Stalvey managed his neck pain for the past seven months by taking prescription pain medication occasionally; however, Mr. Stalvey's pain was aggravated when he rode his tractor (during which he bounced up and down and looked over his shoulder frequently).

25.

On September 5, 2018, Mr. Stalvey presented to Dr. Hellman complaining of neck pain. For the first time, Mr. Stalvey also complained of back pain. The appointment was not a follow-up from Mr. Stalvey's prior appointments; however, Dr. Hellman noted that Mr. Stalvey had a similar complaint of neck pain in 2017, that it was ongoing, and that he presented in the office for some relief.

26.

On October 15, 2018, Mr. Stalvey presented to Dr. Hellman's office as a follow-up to his previous appointment regarding neck and back pain. Mr. Stalvey also presented to review the findings of a recent cervical spine MRI. At this appointment, Dr. Hellman ordered an MRI of Mr. Stalvey's lumbar spine.

27.

On February 6, 2019, Mr. Stalvey presented to Dr. Hellman's office as a follow-up to his previous appointment regarding back pain and to review an MRI of his lumbar spine. He did not present to Dr. Hellman to receive treatment for his neck pain.

28.

On July 12, 2019, Mr. Stalvey presented to Dr. Hellman's office to recheck his neck and back pain. Mr. Stalvey stated that working on his blueberry farm increased his back pain.

29.

Mr. Stalvey only submitted medical bills for six of his visits with Dr. Hellman: January 27, 2016, February 10, 2016, May 24, 2016, October 19, 2016, September 5, 2018, and October 15, 2018. None of the submitted medical bills were for visits or procedures related exclusively to complaints of back pain. The total for these visits is $1,099.00.

30.

At all of Mr. Stalvey's appointments, Dr. Hellman recommended conservative treatment of his neck or back pain. Dr. Hellman wrote Mr. Stalvey a prescription for pain medication at each visit.

31.

Since the accident, Mr. Stalvey underwent three MRIs. On February 2, 2016 and on October 4, 2018, he underwent an MRI of his cervical spine. Both revealed disc herniation at the C5-6. On

January 30, 2019, Mr. Stalvey underwent an MRI of his lumbar spine. This revealed a disc herniation there too. The cost of each MRI was $1,400.00, for a total of $4,200.00.

32.

Dr. Hellman referred Mr. Stalvey to Rehab Services of Coffee, Inc. to receive treatment for his neck and back pain. From December 20, 2018 to March 12, 2019, Mr. Stalvey received such treatment on eight occasions. He submitted medical bills for all eight occasions, totaling $1,389.00.

33.

Mr. Stalvey received prescription medication to help manage his pain; however, he did not always get them refilled. Instead, Mr. Stalvey took—and continues to take—anti-inflammatory over-the-counter medication, used (and continues to use) icepacks, and applied (and continues to apply) CBD oil to help alleviate his pain. Mr. Stalvey is afraid of becoming addicted to prescription pills and limits their use. Mr. Stalvey has spent $164.33 at the Medicine Cabinet filling these prescriptions.

34.

Mr. Stalvey presented no credible evidence showing that his injuries are permanent.

35.

Mr. Stalvey established that he suffered pain in his lumbar spine after the accident. That pain resolved itself within three months of the accident.

36.

The lumbar pain he is currently experiencing was first documented in his medical records on September 5, 2019 and was noted as "recent" at that time.

37.

Mr. Stalvey has established that he experienced pain originating from his cervical spine, received treatment for that pain, and that the pain was related to the car accident involving Ms. Jackson.

38.

Mr. Stalvey has established with the requisite degree of proof that he will return to the doctor for medical treatment related to the pain in his cervical spine; however, Mr. Stalvey has not established with the requisite degree of proof the frequency of those visits, the treatment he will receive, or the cost of such treatment.

39.

Mr. Stalvey presented no evidence that he is permanently disabled because of the accident. Mr. Stalvey has presented no

evidence that he currently has any disability rating because of the accident.

### 40.

Although the pain has impacted his life, Mr. Stalvey is still able to do most of the activities he did prior the accident; however, he can no longer do them as comfortably.

### 41.

Although Mr. Stalvey has been able to maintain his role as the owner and operator of Stalvey Heating and Cooling, he is now limited in what he can do for the company. Due to his neck pain, his tasks at work have shifted from servicing customer's homes to working from the office. In addition, Mr. Stalvey has had to hire help to perform some of the work he was doing prior the accident, like crawling under houses, climbing into attics, and lifting HVAC units. Mr. Stalvey presented no evidence regarding the cost of hiring this additional help.

### 42.

Prior to the accident, Mr. Stalvey harvested honey. Doing so required lifting wooden boxes full of honey that weighed approximately 75-80 pounds. Mr. Stalvey can no longer perform these tasks. Although Mr. Stalvey keeps bees still, he is no longer active with regard to handling the honey.

43.

Mr. Stalvey can no longer perform household duties that require heavy lifting including moving furniture and maintaining the home. Now, he must hire people to perform those tasks. Mr. Stalvey's inability to lift heavy objects due to his neck pain results in Mrs. Stalvey performing most of the household chores, like bringing in the groceries.

44.

Mr. Stalvey's ongoing neck pain has had some impact on his ability to enjoy life. Mr. Stalvey still travels and vacations with his family. He still watches his children play sports. However, those experiences are no longer pain free.

45.

Although Mr. Stalvey still travels, Ms. Stalvey has taken over most of the driving responsibilities. Mr. Stalvey travels with a special pillow to make his ride in the car more comfortable.

46.

Mr. Stalvey can no longer wrestle and roughhouse with his son like he did before the accident. This causes Mr. Stalvey to feel like he is not the father he should be.

47.

Although Mr. Stalvey still plays the guitar at his church, the strap around his neck and shoulders now causes discomfort.

48.

The neck pain Mr. Stalvey experiences interrupts his sleep.

49.

Taken together, Mr. Stalvey has shown that the accident has caused pain in his back that resolved itself three months after the accident. Mr. Stalvey has also shown that the accident caused neck pain that continues to the present day; however, the pain—in frequency, duration, and severity—is inconsistent. Most days it is managed by over-the-counter drugs. Some days it is managed by ointments and creams. On other days, it is managed by prescribed narcotics. On rare occasions, it is worth scheduling a visit with Dr. Hellman. Although it impacts Mr. Stalvey's life, the pain has by no means immobilized him. He can carry on a relatively normal life.

50.

Mr. Stalvey's neck pain is exacerbated by certain activities: heavy lifting, driving his tractor, vigorous exercise, extended time riding in the car, and sitting on bleachers without back support for extended periods of time.

## III. CONCLUSIONS OF LAW

The Court makes the following conclusions of law:

1.

This action is brought by Mr. Stalvey under the Federal Tort Claims Act. 28 U.S.C. §§ 2671 *et seq.* Because the motor vehicle

accident giving rise to this action occurred in Georgia, Georgia's substantive tort law applies. 28 U.S.C. § 1346(b)(1).

2.

To prevail on an ordinary negligence cause of action under Georgia law, a plaintiff must establish the essential elements: duty, breach of duty, direct and proximate cause, and damages. The plaintiff bears the burden of proof. The plaintiff must prove his case by a preponderance of the evidence. When the defendant has admitted negligence, the plaintiff must still prove causation and damages. Arch Ins. Co. v. Clements, Purvis & Stewart, P.C., 850 F. Supp. 2d 1371, 1374 (S.D. Ga. 2011); see also Hunsucker v. Belford, 304 Ga. App. 200, 201 (2010).

3.

A defendant may be held liable for an injury when that person commits a negligent act that puts other forces in motion or operation resulting in the injury when such other forces are the natural and probable result of the act that the defendant committed and that reasonably should have been foreseen by the defendant.

4.

Ordinary negligence means the absence of or the failure to use the degree of care an ordinarily careful person would use under the same or similar circumstances. Before a plaintiff can recover damages from a defendant, there must be injury to the plaintiff resulting from the defendant's negligence.

5.

No plaintiff may recover for injuries or disabilities that are not connected with the act or omission of the defendant in this case. There can be no recovery for the plaintiff for any injury or disability that was not proximately caused by the incident in question.

6.

Proximate cause is that which, in the natural and continuous sequence, unbroken by other causes, produces an event and without which the event would not have occurred. Proximate cause is that which is nearest in the order of responsible causes, and distinguished from remote, that which stands last in causation, not necessarily in time or place, but in causal relation.

7.

Expert testimony is not required when the facts show that the alleged negligence caused the injury and it would be a matter of common knowledge and observation that such an injury would not have occurred if an act had been performed with ordinary skill and care. However, "expert evidence is required where a 'medical question' involving truly <u>specialized</u> medical knowledge (rather than the sort of medical knowledge that is within common understanding and experience) is needed to establish a causal link between the defendant's conduct and the plaintiff's injury." <u>Cowart v. Widener</u>, 287 Ga. 622, 622 (2010) (emphasis in original).

8.

Expert testimony is not necessary "to prove causation of an injury" when there is a "short lapse of time" between the automobile accident and the treatment of an orthopedic injury (like neck or back pain) which the plaintiff "attributes to the accident," particularly when the reported pain is "previously unexperienced" and onsets "within days of an accident and resulting treatment." <u>Lancaster v. USAA</u>, 223 Ga. App. 805, 807 (1998). In such situations, "a [factfinder] could conclude there was a causal connection as a matter of common sense based on the plaintiff's testimony and medical bills." <u>Id.</u>

9.

The opposite is also true. Where the complained-of injury is not temporally related to the accident, there must be expert testimony connecting the complained-of injury to the accident. <u>See id.</u> at 807-08. Indeed, making such a causal connection requires an expert to answer "specialized medical questions" that are "beyond the lay juror's capacity." <u>Cowart</u>, 287 Ga. at 627, 629.

10.

A plaintiff can also recover for aggravation of a preexisting condition that was present prior to the accident if such exacerbation was caused by the negligence of the defendant.

"Georgia law requires a claimant to prove with reasonable certainty not only that he will sustain future medical expenses, but also the amount of such expenses." Hendrix v. Raybestos Manhattan, Inc., 776 F.2d 1492, 1507 (11th Cir. 1985). "Where a party sues for damages, he has the burden of proof of showing the amount of loss in a manner in which the jury . . . can calculate the amount of the loss with a reasonable degree of certainty. An allowance for damages cannot be based on guess work." Id. (quotation omitted); see also Head v. Target Corp., No. 4:09-CV-0012-HLM, 2009 WL 10664782 (N.D. Ga. Dec. 3, 2009); Bennet v. Haley, 132 Ga. App. 512, 515 (1974).

12.

Pain and suffering is a legal item of damages. The measure is the enlightened conscience of a fair and impartial adjudicator. Questions of whether, how much, and how long the plaintiff has suffered or will suffer are for the fact-finder to decide. Pain and suffering include mental suffering, but mental suffering is not a legal item of damage unless there is physical suffering also. Anxiety, shock, and worry are examples of what might be included under mental pain and suffering, and loss of capacity to work or labor, separately from earnings, may be considered as an item causing mental suffering.

If the plaintiff's pain and suffering will continue, then there should be an award for damages for such future pain and suffering as the plaintiff will endure. In making such award, the standard is that of the enlightened conscience of an impartial adjudicator. The fact-finder may take into consideration the fact that the plaintiff is receiving a present cash award for damages not yet suffered.

14.

In a civil action against the United States, no attorney shall charge, demand, receive, or collect for services rendered, fees in excess of 25% of any judgment rendered. 28 U.S.C. § 2678.

## IV. Mixed Findings of Fact and Conclusions of Law

The Court makes the following mixed findings of fact and conclusions of law:

1.

Ms. Jackson was negligent at the time of the November 2015 accident and is entirely at fault for the accident.

2.

The Defendant, the United States of America, is vicariously liable for Ms. Jackson's negligence.

3.

Expert testimony is not required to establish that the accident was the cause of Mr. Stalvey's neck pain from the date of

the accident to the present. Defendant is liable to Plaintiff for damages arising from that neck pain.

4.

Expert testimony is not required to established that the accident was the cause of Mr. Stalvey's back pain from the date of the accident to January 2016. Defendant is liable to plaintiff for damages arising from that back pain.

5.

The preponderance of the credible evidence shows that Mr. Stalvey's back pain resolved itself within three months of the accident. It then resurfaced almost three years later. Given the lack of temporal proximity, the causal connection between the 2015 accident and Mr. Stalvey's 2018 lumbar spine disc herniation presents a specialized medical question that a factfinder cannot determine without expert testimony. Accordingly, Plaintiff did not prove that the accident was the cause of his most recent back pain. Therefore, Defendant is not liable to Plaintiff for damages arising from his post-2018 back pain.

6.

Although Plaintiff claimed additional amounts at trial, the Court finds that the Defendant is liable for the following submitted and itemized medical expenses, totaling **$8,716.33**:

A.   CRH Physician Practices                    $150.00

B.   Schumachergroup (Emergency Treatment)   $1,213.00

|      |                                        |            |
|------|----------------------------------------|------------|
| C.   | Radiology Associates of South Georgia  | $98.00     |
| D.   | Douglas Spine Center                   | $1,803.00  |
| E.   | Georgia Sports Medicine                | $1,099.00  |
| F.   | Open MRI of Douglas                    | $2,800.00  |
| G.   | Rehab Services of Coffee County        | $1,389.00  |
| H.   | The Medicine Cabinet                   | $164.33    |
|      | Total:                                 | $8,716.33  |

7.

The United States is not liable for the cost of Mr. Stalvey's 2019 MRI of his lumbar spine.

8.

After considering the evidence and weighing the credibility of the witnesses, the Court finds that Mr. Stalvey failed to prove that he is entitled to compensation for future medical expenses. Although Plaintiff proved it is reasonably certain that he will have future medical expenses, he did not prove the nature or extent of the treatment that might be required, nor did he prove the cost of such treatment. Plaintiff's attorney's "take" on how this Court should calculate Mr. Stalvey's future medical needs lacked any degree of certainty or even probability. The Georgia Court of Appeals has previously rejected such calculations as "conjecture and speculation." Bennett, 132 Ga. App. at 515. Here, this Court does the same.

9.

After reviewing and solemnly considering the evidence and testimony presented at trial, the enlightened conscience of this Court finds that Mr. Stalvey should be awarded **$60,000.00** for pain and suffering.

10.

Attorney' fees in this matter are governed by the Federal Torts Claim Act. 28 U.S.C. § 2678. As such, they will be deducted from the total judgment awarded.

## V.   CONCLUSION

For the reasons provided above, Plaintiff's Objection to the Magistrate Judge's Order, dkt. no. 70, is **OVERRULED**. Since the Court addressed the substance of Defendant's two Rule 52(c) motions in this Order, both are **DENIED as moot**. Finally, the Plaintiff is entitled to recover from the Defendant the sum of **$68,716.33**. The Clerk is **DIRECTED** to close this case.

**SO ORDERED**, this 9th day of April, 2020.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA